UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

    - v. -                                      :          14 Cr. 608 (AJN)

NUNZIO GENTILLE,                       :

                Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States of America

Edward B. Diskant
Andrew D. Beaty
Assistant United States Attorneys
    - Of Counsel -

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

          - v. -                      :         14 Cr. 608 (AJN)

NUNZIO GENTILLE,                      :

                    Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## SENTENCING MEMORANDUM

The Government respectfully submits the following memorandum in connection with the sentencing of Nunzio Gentille (the "defendant"), which is scheduled for May 5, 2016. For the reasons that follow, the Government submits that a sentence within the parties' stipulated Guidelines range of 77 to 96 months' imprisonment would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a).

### I. BACKGROUND

#### A. Offense Conduct

The defendant was charged in Indictment 14 Cr. 608 (AJN) with one-count of conspiring to distribute narcotics. The charge stems from the defendant's participation in organizing and running a narcotics delivery service based in Maspeth, New York (the "DTO") which sold individual-use quantities of marihuana and the party drug "molly" to customers throughout the New York City area. In particular, for at least a six-month time frame in early 2014, the defendant ran the operation by obtaining narcotics from suppliers, supervising a crew of co-conspirators who collectively received orders from the DTO's customers – which were typically

placed via text message – and directing a fleet of drivers who in turn made deliveries of marihuana and molly to the DTO's customers. (PSR ¶¶ 14-16.).

As detailed more fully in the criminal complaint in this case, a copy of which is attached hereto as Exhibit A, the DTO typically accepted orders for narcotics via text messages placed by customers to one or more cellphones used by the defendants for that purpose. The defendant, along with co-defendant Michael Maldonado, typically communicated directly with customers and received these orders before dispatching one of the DTO's drivers – including co-defendants Bolivar Vasquez and Dawid Iwazek – to make dozens of weekly deliveries of narcotics. (*Id.* ¶ 17).

As part of the investigation, which was spearheaded by the Drug Enforcement Administration ("DEA"), law enforcement agents intercepted thousands of text messages and dozens of phone calls, some of which involved this defendant. As detailed more fully in the PSR, these calls and text messages confirmed the defendant's role in orchestrating the DTO's activities, in accepting orders for narcotics placed by customers and in directing the activities of the DTO's drivers who then made deliveries to those customers. (*E.g.*, *id.* ¶¶ 30–33, 46.) Agent surveillance further confirmed the defendant's regular presence at the DTO's base of operations or "stash house." (*Id.* ¶ 27.) As a part of the investigation, agents also conducted multiple undercover or controlled purchases of narcotics from the DTO, some of which were arranged via text messages and other communications with this defendant. During these controlled purchases, law enforcement was typically able to buy 10-15 vials of "molly" along with numerous other controlled substances, including marihuana. (*E.g.*, *id.* ¶¶ 24, 26.)

The defendant was arrested on July 10, 2014. On April 9, 2015, the defendant pled guilty to the sole count of the Indictment pursuant to an agreement with the Government.

Pursuant to the terms of that agreement, the parties' agreed that the defendant's conduct involved the distribution of at least 777 grams of methylone or "molly" as well as at least 76.2 kilograms of marihuana. As detailed further below, the parties also agreed to an advisory, applicable Guidelines Range of 77 to 96 months' imprisonment (the "Stipulated Guidelines Range").

### B. The Guidelines

As stipulated to by the parties as a condition of the plea agreement, and as independently determined by Probation as reflected in the Presentence Report ("PSR"), the November 1, 2015 Guidelines manual[1] is applicable to the defendant's offense level in the following manner:

The base offense level applicable to the offense charged in the Indictment is U.S.S.G. § 2D1.1. Pursuant to U.S.S.G. § 2D1.1(c)(8), the base offense level is 24 because the offense involved more than 100 kilograms of marihuana but less than 400 kilograms of marihuana. (PSR ¶ 57).[2]

Pursuant to U.S.S.G. § 3B1.1(b), three levels are added because the defendant was a manager or supervisor of the criminal activity charged in Count One. (*Id.* ¶ 60.)

Finally, pursuant to U.S.S.G. § 3E1.1(a) and (b), a three-level reduction is warranted for the defendant's timely demonstration of acceptance of responsibility. The defendant's total adjusted offense level is thus 24. (*Id.* ¶ 64.)

---

[1] Although the plea agreement and the PSR both refer to the November 1, 2014 Guidelines manual, the November 1, 2015 Guidelines manual appropriately applies here. The change in manual does not, however, work any change in the applicable Guidelines range.

[2] As detailed more fully in the parties plea agreement and in the PSR, because the offense conduct involves multiple controlled substances – *i.e.*, molly and marihuana – the molly is converted to an equivalent amount of marihuana. In this case, the defendant agreed, as a condition of the plea agreement, that his conduct involved 76.2 kilograms of marihuana along with 777 grams of methylone, or "molly," which converts to 194.24 kilograms of marihuana, for a total of 270.45 kilograms of marihuana. (PSR ¶ 57.)

The parties' plea agreement and the PSR differ, however, as to the defendant's criminal history category. The plea agreement calculated the defendant's criminal history category as IV, based on eight criminal history points. (*See* PSR ¶ 3.) That calculation resulted in the Stipulated Guidelines Range of 77 to 96 months' imprisonment. The PSR, however, includes an additional conviction, which results in two additional criminal history points. (*Id.* ¶ 67.) These two additional points stem from a conviction for assault in the third degree in 2004, which resulted in a sentence of 60 days' imprisonment and three years' probation. (*Id.*) In 2007, that term of probation was revoked after the defendant violated its terms, and he was resentenced to six months' imprisonment. (*Id.*) Accordingly, the PSR concludes that the defendant has 10 criminal history points and is therefore in Criminal History Category V, resulting in an applicable Guidelines range of 92 to 115 months' imprisonment (the "PSR Guidelines' Range"). (*Id.* ¶¶ 73, 106–107.)

The defense objects to these two additional criminal history points. Contrary to the defense submission, however, U.S.S.G. § 4A1.2(d) does not apply, because the defendant was 18 at the time of the 2004 assault. (*Id.* ¶ 67.) Although he was adjudicated a "youthful offender" under New York State law, that appellation does not expunge a conviction and does not prevent a crime the defendant committed after he was 18 from being counted by the Guidelines. *See United States* v. *Matthews*, 205 F.3d 544, 549 (2d Cir. 2000) (concluding that "the district court properly included [defendant's] youthful offender adjudication in calculating his criminal history category"); *accord United States* v. *Cuello*, 357 F.3d 162, 168 (2d Cir. 2004); *United States* v. *Driskell*, 277 F.3d 150, 155 (2d Cir. 2002). Two criminal history points, as opposed to one, are warranted under U.S.S.G. §§ 4A1.2(k)(1) and 4A1.1(b), because the original sentence and the sentence upon revocation of probation together exceed six months.

For these reasons, the Government believes that Probation has correctly calculated the defendant's criminal history category. Nonetheless, the Government intends to honor the terms of its plea agreement with the defendant and will therefore refer principally to the parties' Stipulated Guidelines Range, rather than the PSR Guidelines Range, in this submission.

## II. DISCUSSION

In light of the nature of the instant offense as well as the history and characteristics of this defendant, the Government respectfully submits that a sentence within the parties' Stipulated Guidelines Range of 77 to 96 months' imprisonment would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.[3] Application of the Section 3553(a) factors in this case militates in favor of such a sentence:

*First*, a sentence within the stipulated Guidelines Range would reflect the seriousness of the offense, promote respect for the law, and provide just punishment. *See* 18 U.S.C.

---

[3] As the defendant notes in his submission, co-defendants in this case and a co-conspirator charged separately have all received below Guidelines sentences. The Government has taken the position, with respect to each of those individuals, that a Guidelines sentence was sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing set forth in Title 18, United States Code, Section 3553(a), and the Government takes that position here as well.

At the same time – and as it has done in its previous submissions – the Government wishes to bring to the Court's attention the sentences imposed on the defendant's co-conspirators and their relative levels of culpability. Co-defendants Dawid Iwaszek and Bolivar Vasquez – both drivers for the DTO held responsible for similar drug quantities to this defendant – were sentenced by Your Honor to a term of imprisonment of 12 months and one day. Co-defendant Josette Lebron received a sentence of time served. Co-defendant Michael Maldonado, who received two leadership points for his role in the conspiracy, received a sentence of 30 months. Kyle Eschner, a co-conspirator and driver for the DTO who was charged separately, was sentenced by Judge Torres to time served, which, at that point, amounted to approximately three months' imprisonment. *See United States* v. *Eschner*, 14 Cr. 657 (AT). This defendant's role is more substantial than any of his co-defendants', including that of Maldonado, and involved not only managing Maldonado and Lebron, but also dealing with customers, handling orders, and dispatching drivers to deliver narcotics.

§ 3553(a)(2)(A).  As discussed above, the defendant was the leader of a DTO responsible for distributing significant quantities of not only marihuana but the party drug "molly" which is frequently abused by teenagers and young adults, sometimes to lethal effect.[4]  He organized and directed a sophisticated organization, one employing multiple drivers to make daily and weekly deliveries to hundreds of customers all over New York City.  The defendant himself coordinated a substantial portion of those deliveries.  A substantial sentence is thus appropriate to reflect the seriousness of the offense conduct and to provide just punishment.

*Second*, a substantial sentence would be appropriate to afford adequate deterrence.  *See* 18 U.S.C. § 3553(a)(2)(B).   With respect to specific deterrence, as noted above, the defendant has a significant criminal history.  In particular, he has sustained three prior drug convictions, the most serious of which resulted in a sentence of 18 months' imprisonment.  Each time, he continued to commit crimes, including drug crimes, upon his release.  The present offense represents his most serious and significant offense to date.  Those facts alone counsel strongly in favor of the need for a substantial term of imprisonment to promote deterrence with respect to this defendant.

Moreover, the defendant has demonstrated that his arrest for the present offense has not led him to respect the law or deterred him from committing crimes.  On or about January 27, 2016, the defendant was caught by officers the Bureau of Prisons at the Metropolitan Detention Facility ("MDC") with a contraband cellphone concealed inside a bar of soap.  The defendant

---

[4] For example, in September 2013, or shortly before the period of the charged conspiracy, two young adults, a 20-year-old and a 23-year-old died after taking molly at the New York City music festival "Electric Zoo."  *See* "Electric Zoo Music Festival Cancelled after 2 Deaths Blamed on Drugs," CNN (Sept. 3, 2013), *available at:* http://www.cnn.com/2013/09/01/us/new-york-music-festival-canceled/index.html.

admitted to an officer that the cellphone was his, and was subsequently disciplined.[5]  This flagrant misbehavior in prison is not only itself a violation of federal law, *see* 18 U.S.C. § 1791, but strongly suggests that the defendant has not yet learned any lessons or changed his ways since his guilty plea nearly a year ago.

Finally, general deterrence is a factor that should weigh heavily on the Court in imposing sentence.  Drug trafficking is a very serious crime – one that far too many people, including this defendant, fall into as a source of easy money – and one with incredibly serious consequences.  Government data has shown an alarming rise in the number of emergency room visits prompted by molly use, in particular, with more than 22,000 such visits having been recorded in 2009 alone, the last year for which data is available.  That figure represented a nearly 123 percent increase in such visits since only 2005.[6]  Sending a strong message that drug trafficking is a serious crime which will carry serious penalties is both necessary and appropriate under the circumstances.

---

[5] Because this conduct took place after the PSR was finalized on June 29, 2015, it is not reflected in the PSR.  The Government has relied on documents and reports from the Bureau of Prisons for the above information, which the Government will provide to the Court upon request.

[6] *Id.*; *see also* "9 Things Everyone Should Know About Molly," CNN (Nov. 23, 2013), *available at*:  http://www.cnn.com/2013/11/22/health/9-things-molly-drug.

### III. CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines Range of 77 to 96 months' imprisonment is appropriate here and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing.

Dated: New York, New York
May 3, 2016

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney
                                        Southern District of New York

By: _____
            Edward B. Diskant / Andrew D. Beaty
            Assistant United States Attorneys
            (212) 637-2294 / 2198